# IN THE SUPREME COURT OF THE STATE OF NEVADA

FILED

NOV 17 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

IN THE MATTER OF DISCIPLINE OF JACOB L. HAFTER, BAR NO. 9303.

No. 71744

## ORDER OF SUSPENSION

This is an automatic review of a Southern Nevada Disciplinary Board hearing panel's findings of fact, conclusions of law, and recommendation for discipline regarding attorney Jacob L. Hafter. After a hearing, the panel found that Hafter violated RPC 3.3 (candor toward the tribunal), RPC 3.4(d) (fairness towards opposing party and counsel), RPC 3.5(d) (impartiality and decorum of the tribunal and relations with the jury), RPC 3.6 (trial publicity), and RPC 8.4(c) and (d) (misconduct) based on two separate instances: conduct during a collections action against himself and his wife and public statements he made regarding a pending trial and the presiding judge. The panel found five aggravating factors[1] and no mitigating factors. Ultimately, the panel recommended a six-month suspension and that Hafter pay the costs associated with the disciplinary proceeding.

*Statements made under oath*

The charges of violations of RPC 3.3, 3.4(d), and 8.4(c) stem from Hafter's statements, made under oath, in the course of a collections

---

[1]The five aggravating were prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct, refusal to acknowledge wrongful nature of conduct, and substantial experience in the practice of law.

17-39815

action against him and his wife. Representing both himself and his wife, Hafter informed collection counsel that all of their possessions that may otherwise be subject to collections were owned by a family trust. When collections counsel requested documents regarding the trust, Hafter refused to provide any information, asserting that they had no right to it because the trust was not a judgment debtor. Additionally, in response to garnishment interrogatories, Hafter, as manager of the law firm receiving the interrogatories, responded that he "does not earn a salary or take a draw, as he never makes money from the firm's cases and does not own the firm." During both Hafter's and his wife's judgment debtor examinations, they disavowed owning any property or receiving any income and repeated that all of their possessions were owned by the trust. Despite Hafter's and his wife's representations regarding their income, evidence was presented during the hearing demonstrating that Hafter had claimed a substantial income on a car lease application; had recently received sizeable attorney fees and contingency fee payments; had made a large personal donation to his political campaign; and through his law firm, had created companies to purchase a number of properties during the collections process.

As to the charges stemming from these facts, Hafter argues that there is no evidence supporting the panel's finding that he made false statements, offered false evidence, and failed to disclose relevant information to opposing counsel during the collections case because it was never proven that he received paychecks from his work at the law firm or any other forms of income. The State Bar has the burden of showing by clear and convincing evidence that Hafter committed the violations charged. SCR 105(2)(f); *In re Discipline of Drakulich*, 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995). We employ a deferential standard of review with

respect to the hearing panel's findings of fact, SCR 105(3)(b), and will not set them aside unless they are clearly erroneous or not supported by substantial evidence, *see generally Sowers v. Forest Hills Subdivision,* 129 Nev. 99, 105, 294 P.3d 427, 432 (2013); *Ogawa v. Ogawa,* 125 Nev. 660, 668, 221 P.3d 699, 704 (2009).

Having reviewed the record on appeal, we conclude that there is substantial evidence to support the panel's findings that Hafter violated RPC 3.3 (providing that a lawyer shall not knowingly make a false statement of fact to a tribunal), RPC 3.4(d) (providing that a lawyer shall not "fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party"), and RPC 8.4(c) (prohibiting an attorney from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation"). Indeed, the evidence of the attorney fees and contingency payments Hafter's law firm received, the personal donation Hafter made to his political campaign, and the purchase of multiple properties all contradict Hafter's statements, made under oath, that he lacked any income or possessions to satisfy the judgment against him. Accordingly, we agree with the hearing panel that Hafter committed the violations set forth above.

*Statements regarding pending case*

The remaining charges against Hafter stem from a case wherein he represented a doctor defending against a medical malpractice and wrongful death lawsuit. After Hafter's multiple requests to change the trial date due to its conflict with a religious holiday were denied, Hafter posted public comments on Facebook regarding the case alleging that the presiding judge was biased and anti-Semitic, had no justification for denying his requests, and had absolute immunity from trampling on the

rights of others. Hafter made similar comments that were published in two newspaper articles about the matter.

There was no basis in fact for Hafter's comments that the presiding judge lacked any reason besides bias and anti-Semitism to deny Hafter's requests to change the trial date. The judge specifically stated that the moving of the trial date would cause prejudice to the plaintiffs because they would have to change their experts' schedules and, because Hafter was the attorney that agreed to the trial date in the first place, that the denial had nothing to do with his religion, but rather, "[i]t had everything to do with [Hafter's] ability to control [his] own schedule." While we recognize that disciplining an attorney for statements made regarding a sitting judge can give rise to constitutional concerns, because Hafter's statements respecting the refusal to change the trial date after it was set with his agreement were not truthful, they are not subject to First Amendment protections. *See Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1438-39 (9th Cir. 1995) (holding that a statement of opinion is not protected by the First Amendment either if it is based on disclosed facts that are untrue or if it is based on implied undisclosed facts, but the speaker has no factual basis for the stated opinion).

It is not necessary to address Hafter's remaining statements respecting the judge and the judicial proceedings. The collection action violations and his statements respecting the refusal to grant a continuance of a trial setting to which he had agreed support the recommended discipline of a six-month suspension. *See* ABA Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards* (*Standards*) 452 (2016) (providing that an attorney should be

disciplined "consistent with the sanctions for the most serious instance of misconduct").

*Discipline*

The panel recommends a six-month suspension. Hafter asserts that he should not be disciplined at all, and the State Bar requests a one-year suspension. While the hearing panel's recommendation is persuasive, we are not bound by the panel's recommendation and we review the proposed form of discipline de novo. SCR 105(3)(b); *In re Discipline of Schaefer*, 117 Nev. 496, 515, 25 P.3d 191, 204 (2001). In determining the appropriate discipline, we weigh four factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008).

In this case, the most serious instance of misconduct was Hafter's intentional dishonesty in the statements he made under oath, which was done for his personal benefit. By making such false statements, Hafter knowingly violated duties owed to the legal system and as a professional, which resulted in actual injury and had the potential to cause more serious injury. This is also not the first time Hafter has been disciplined by this court, as he was privately reprimanded in 2012. When considering this, along with the four other aggravating factors and the lack of mitigating factors, we conclude that the six-month suspension recommended by the hearing panel is appropriate and sufficient to serve the purpose of attorney discipline to protect the public, the courts, and the legal profession. *State Bar of Nev. v. Claiborne*, 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988). We also agree with the panel's recommendation to impose the costs of the disciplinary proceeding as it is authorized under SCR 120(1) and Hafter fails to present any cogent argument against the payment

of costs. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (providing that this court need not address claims that are not cogently argued or supported by relevant authority).

Accordingly, we hereby suspend attorney Jacob L. Hafter from the practice of law in Nevada for six months, commencing from the date of this order. Hafter is further ordered to pay the costs associated with the disciplinary proceeding within 30 days from the date of this order. The parties shall comply with SCR 115 and 121.1.[2]

It is so ORDERED.

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

CHERRY, C.J., GIBBONS, J., and STIGLICH, J., concurring in part and dissenting in part:

We concur with the majority that a six-month suspension is appropriate based on the violations of RPC 3.3, 3.4(d), and 8.4(c) stemming from Hafter's statements made under oath and that Hafter should be required to pay the costs of the discipline proceeding as recommended by the hearing panel. We dissent, however, from the majority's decision to impose the suspension immediately. In our view, a stayed suspension with

_____

[2]In addition to the notices and disclosures required by SCR 121.1, the State Bar shall also send a copy of this order to any other state bar wherein Hafter is licensed to practice law.

a probationary period would be sufficient to serve the purpose of attorney discipline under the circumstances presented and considering that Hafter's single prior discipline matter resulted in a private reprimand. Accordingly, we would stay the suspension and place Hafter on probation.

_____, C.J.
Cherry

_____, J.
Gibbons

_____, J.
Stiglich

cc:    Chair, Southern Nevada Disciplinary Board
       Hafter Law
       C. Stanley Hunterton, Bar Counsel, State Bar of Nevada
       Kimberly K. Farmer, Executive Director, State Bar of Nevada
       Perry Thompson, Admissions Office, U.S. Supreme Court